USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/18/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUN CHEN,

            Plaintiff,

- against -

SUSHI 21 NY INC., et al.,

            Defendants.

---

17cv6153 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, District Judge:

    The plaintiff, Jun Chen, brings this action against the defendants, Sushi 21 NY Inc. and Shan Chen, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The plaintiff primarily alleges that the defendants failed to pay him minimum wage and overtime compensation.

    The defendants now move for summary judgment, arguing that the plaintiff's FLSA claims must be dismissed because the restaurant does not qualify as an "enterprise engaged in commerce" under the FLSA and that the plaintiff is not entitled to individual coverage under the FLSA. The defendants also argue that the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

    For the reasons discussed below, the defendants' motion for summary judgment is **granted** and the Court will not exercise supplemental jurisdiction over the remaining state law claims.

1

# I.

The following facts are undisputed for purposes of this motion, unless otherwise indicated.

The plaintiff worked as a delivery person at Sushi 21 NY Inc. (the "restaurant"), a sushi restaurant located in Manhattan. (Pl.'s 56.1 ¶ 1; Pl.'s Dep. at 21.) The parties dispute not only the dates that the plaintiff was employed at the restaurant, but also the hours that he worked each week. The defendants allege that the plaintiff was employed at the restaurant from July 1, 2016, to October 6, 2016. (Defs.' Mem. at 5.) The defendants also claim that the plaintiff "generally worked less than 44 hours per week, and was paid overtime for the few overtime hours worked." (Id.) They also assert that the plaintiff's daily tips were recorded. (Defs.' Mem. at 5.)

The plaintiff alleges that he worked at the restaurant from May 6, 2015, to October 6, 2016. (Pl.'s Dep. at 25-26, 101.) He alleges that he worked five days per week from 11 a.m. to 10 p.m., and also one day a week from 4 p.m. to 10 p.m. (Compl. ¶ 30.)

The plaintiff claims that during the time he worked at the restaurant, the defendants maintained a policy and practice of requiring him to work in excess of forty hours per week without providing him minimum wage or overtime compensation.

## II.

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment should be granted against that party.

Celotex, 477 U.S. at 322; Fed. R. Civ. P. 56(c)(1)(B) & 2010 Advisory Committee Note.

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

**III.**

The defendants contend that summary judgment should be granted in their favor because the plaintiff cannot show that the restaurant earned more than $500,000 in sales annually -- the required amount for enterprise coverage under the FLSA.

The FLSA requires employers who meet certain preconditions to pay workers a minimum wage and to provide overtime pay where workers exceed forty hours of work per week. See 29 U.S.C.

§ 206(a) (minimum wage); id. § 207(a) (overtime pay). Because the FLSA was enacted to "correct and . . . eliminate" "conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers," 29 U.S.C. § 202(a)-(b), courts construe the statute "liberally to apply to the furthest reaches consistent with congressional direction," Jacobs v. N.Y. Foundling Hosp., 577 F.3d 93, 97 n.2 (2d Cir. 2009) (per curiam) (quoting Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985)).

Employees qualify for the FLSA's minimum wage and overtime requirements if (1) in any workweek the employee is "engaged in commerce or in the production of goods for commerce" (individual coverage) or (2) the employee "is employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a)(1).

The plaintiff does not assert that he is entitled to individual coverage under the FLSA. Rather, the plaintiff asserts that the FLSA's minimum-wage and overtime provisions apply based on a theory of enterprise coverage. Under an "enterprise coverage" application, the employee does not himself need to be involved in an activity that affects interstate commerce. Jacobs, 577 F.3d at 96-97 (citing Alamo Found., 471 U.S. at 296). All employees of a business are covered under an

5

enterprise theory if the defendant business (1) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A); see Monterossa v. Martinez Rest. Corp., No. 11cv3689, 2012 WL 3890212, at *2-3 (S.D.N.Y. Sept. 7, 2012).

In this case, the defendants argue that the restaurant's annual gross income falls short of the threshold for enterprise coverage. The defendants present the restaurant's corporate tax returns as evidence that its annual gross sales did not exceed $500,000. Those records indicate that from May 1, 2014, to April 30, 2015, the restaurant's gross sales were $400,704; from May 1, 2015, to April 30, 2016, gross sales were $374,331; and from May 1, 2016, to April 30, 2017, gross sales were $355,058. The tax returns reflect that they were prepared by an independent tax preparer and were signed by defendant Chen under the penalties of perjury. (Wong Decl., Ex. 1.)

The plaintiff claims that the restaurant's tax returns are inaccurate and underrepresent its gross revenue. This is plainly a serious allegation. The plaintiff admits that he does not have any personal knowledge regarding the restaurant's gross

6

income. (Pl.'s Dep. at 65-67.) Instead, the plaintiff offers W-2 forms from 2015 and 2016 issued by the restaurant and asserts that these forms reflect that the restaurant paid employees a total of $120,761 in 2015 and $112,897 in 2016. The plaintiff then compares those figures with the corporate tax returns, which reported salaries as $66,128 in 2015 and $76,940 in 2016. Noting the disparity between the tax returns and the W-2 forms, the plaintiff asserts that he has shown that the defendants were underreporting income on the restaurant's tax returns.

The plaintiff's conclusion is based on both faulty comparisons and calculations. For example, the plaintiff compares the total salary figure from the employee W-2 forms with the total salary figure from the corporate tax returns. But those documents cover different time periods: the W-2 forms cover the full calendar year from January through December for years 2015 and 2016, while the restaurant's corporate tax returns cover a period from May 1 to April 30 of each of the years. Moreover, the tax returns and W-2s do not calculate wages in the same way. The W-2 forms include an employee's income from their regular wages as well as tip income. On the other hand, the corporate tax returns reflect only wages paid by the company -- it does not include tips the employees received from customers. The plaintiff also fails to exclude defendant

7

Chen's salary from his calculation of the total W-2 salary figure, and then compares that figure with the salary expenditure listed on the corporate tax return, which does exclude defendant Chen's salary.[1] If the salaries are properly accounted for based on the proper figures, the restaurant's yearly sales totals are less than $500,000.

The plaintiff also claims that the restaurant had credit card sales for 2015 and 2016 of $358,558.02 and $342,346.94, respectively. To arrive at these figures, the plaintiff seems to have added the restaurant's total bank deposits for 2015 and 2016 and then represented the number as the restaurant's "total credit card sales." But the restaurant's bank statements reflect more than just credit card sales -- the restaurant had income from other sources, including from food delivery services and cash payments. Thus, the plaintiff's figures overstate the restaurant's credit card sales.

The plaintiff uses the "total credit card sales" figures that he came up with, along with defendant Chen's deposition testimony that approximately 60 to 70 percent of the restaurant's gross revenue is from credit card sales, to assert that the business's income exceeded $500,000. However, the

---

[1] Because defendant Chen is an officer of the restaurant, his salary is reported separately from the employee-salary total on the corporate tax return.

plaintiff's credit card totals are faulty. But, in any event, defendant Chen stated during his deposition that the 60 to 70 percent figure was only an estimate. The defendants represent that the restaurant had $293,020 in credit card sales in 2015 and $256,281 in 2016. (S. Chen Reply Decl. ¶¶ 18-19.) The plaintiff's improper calculations are not sufficient to create an issue of fact on this point. Jian Long Li v. Li Qin Zhao, 35 F. Supp. 3d 300, 306 (E.D.N.Y. 2014) ("It is not enough for [the plaintiff] to argue that the tax returns did not credibly report the restaurant's gross sales, when considered alongside its costs, without furnishing concrete and affirmative evidence to support the conclusion that the restaurant's gross sales were more than $500,000 every year." (quotation marks omitted)).

Thus, the plaintiff has failed to produce any "concrete and affirmative evidence" to challenge the figures in the defendant's corporate tax returns. Id. The plaintiff, therefore, has failed to present sufficient evidence from which a reasonable jury could conclude that the defendant restaurant grossed more than $500,000 per year. The uncontradicted tax returns show that the defendant restaurant did not gross more than $500,000 per year. Accordingly, the plaintiff cannot show that the defendant restaurant was a covered enterprise under the FLSA and the defendants' motion for summary judgment dismissing the plaintiff's FLSA claims is **granted**.

9

**IV.**

Having dismissed the plaintiff's FLSA claims, the Court declines to exercise supplemental jurisdiction over his state law claims. Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). This is not a case where the Court decided the issue sua sponte on the eve of trial. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 82 (2d Cir. 2018) (reversing the trial court's sua sponte decision to decline to exercise supplemental jurisdiction on the eve of trial). In this case, the parties have briefed this issue, a trial has not yet been scheduled, and no pre-trial filings have been made. Moreover, the defendants have contested federal jurisdiction since the outset of this case. The plaintiff was well aware that if the FLSA jurisdictional limit was not satisfied, the case should not have been brought in federal court. Therefore, the plaintiff's request for supplemental jurisdiction is denied, and the state law claims are **dismissed without prejudice**.

**CONCLUSION**

For the foregoing reasons, the defendants' motion for summary judgment is **granted**. The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without

10

merit. The plaintiff's FLSA claims are dismissed with prejudice. The plaintiff's NYLL claims are dismissed without prejudice because the Court declines to exercise jurisdiction over those claims. The Clerk of Court is directed to enter judgment accordingly. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:**    **New York, New York**
           **December 18, 2018**

                                                    John G. Koeltl
                                      United States District Judge